Shall we switch sides? No, we don't need to. Thank you, your honors. Please, the court. It's good to see you again. Yes, it's been a long time. We'd like to reserve four minutes for rebuttal. Thank you. As I mentioned in the briefs, and I think should be apparent from review of the public records, this is not a typical plaintiff that stands before the court. This plaintiff has made a business of suing karaoke jockeys, people who perform karaoke songs for others to sing with at bars and other nightclubs. They've made a business of suing these defendants for trademark infringement, which more properly might sound in copyright. In this case, though, aside from all that other public equity kind of issues regarding this plaintiff, in this particular case, the plaintiff acted in a way that is just, I think it defines what it's not an ordinary case. This is not an ordinary case, not from the start and not to the end. When the district court judge decided to deny us attorney's fees for any of the relief that we sought, whether it's under Rule 54, whether it's under Rule 11, or it's under Rule 37, he basically used a standard which now has been updated. The Sixth Circuit standard in EGLE Limited certainly must now be viewed through the Supreme Court's recent Octane Fitness v. Icon Health, which came out in April of last year after the judge's ruling. The Sixth Circuit has had only one case that I'm aware of that cites this particular case. In any case, in any situation, Octane Fitness emphasizes that an exceptional case for attorney's fees does not mean it has to be a sanctionable case. It's something much less or much different from just merely a sanctionable case. Octane Fitness says the court has to consider all of the factors and the totality of the circumstances to whether this is a case that's not run-of-the-mill, out of the ordinary. The Sixth Circuit clearly has been more restrictive than that and basically requiring an oppressive standard, essentially a baseless case from the start for a defendant to recover attorney's fees. Based on those factors alone, under Octane, the judge's ruling was primarily based on the fact that the plaintiff was able to marshal enough evidence to survive summary judgment, which was decreed by this court in his previous appeal in this particular case. A number of the factors that I think are crucially important to understanding what's going on here occurred early in the case before discovery, and then there's also issues that occurred at the time of the trial and during the trial. I'll use a few examples that I'm not aware that the district court specifically pointed out. In particular, evidence that was alleged in the complaint of hard drives that were allegedly infringing, that were purchased from my client, and that were later testified about in an affidavit by the president of Sleptone, those hard drives never were produced to the defendants, were never able to be analyzed by the defendants. So the evidence on which the case was based on from the start was kept from the defendants. We only found out there were motions to compel at least twice filed about getting that particular evidence because we didn't believe it said what the plaintiffs said it did. We only found out at trial that an agent for the plaintiff had turned over that evidence to one of the witnesses for the plaintiff and a competitor of our client, and that person had sold that material. So the defense never had the opportunity to examine that material and only found out what happened to it during the trial. The defendants spent thousands and thousands of dollars and a multitude of motions chasing after that evidence, which they thought was exculpatory, and they find out at the trial that it had been sent off to somebody else. That doesn't seem to me, you know, when we're doing civil cases in intellectual property law, we sometimes don't see things the way the rest of the world sees them, but that's certainly not a usual thing in a trademark case. In addition to that, the plaintiff filed for a default judgment and Mr. Slepp himself entered a fact affidavit that said, I've looked at these hard drives and they show infringement. Well, it turns out in his testimony, and that he later recanted in another affidavit, Mr. Slepp never actually saw those hard drives. He says that they didn't exist or they never were in their possession. He said he was mistaken. Someone else told him that. Mr. Slepp tried to get a $12 million default judgment based on a demonstrably misrepresenting affidavit. That, to me, when a plaintiff himself misstates facts on the record to gain an advantage, that is not a normal course of business. That's not run-of-the-mill. That is a factor that the court should have addressed as something that would support the finding of an exceptional case. If you look at that under the lens of octane fitness, that is certainly something that's not in the ordinary course of business. What is the standard you're saying should apply now after octane? After octane, the standard is more that it isn't a standard, it's not a fixed standard, it's not set in stone in the sense that exceptional is not defined in the act, so it's given its ordinary dictionary definition. The court is supposed to look at all the factors in the case, whether there was oppressiveness, whether there was misbehavior on the part of the defendants or part of either side, whether there was a public interest in deterring this kind of behavior in the future. One of the reasons I mentioned the litigation activity of the plaintiff is that public interest factor of deterring this plaintiff from pursuing this kind of trademark litigation over and over and over again is a very important factor that the court should consider. Does this plaintiff practice fair play in a normal course of business? I think the answer is, and we've cited in our brief below, that this plaintiff has been at least, whether or not sanctioned, but reprimanded by courts for its behavior in a number of different cases. There's a recent case in California where the quote was, they take trolling to a new level, and I think that's actually a fair assessment of the facts. There was a case in Nevada where they sued more than 10 defendants, if I remember the number correctly, and those defendants had no connection when another judge there said they had to be separated out in individual cases. Same thing happened in a lesser extent in Florida. In essence, Octane says, sanctional conduct is not the appropriate benchmark. That's a quote from the case. The district court needs to assess all the factors that would weigh into determining the totality of circumstances, whether it's appropriate to consider this case not in the ordinary course of business. In addition to that Rule 54 attorney's fees, two other aspects of relief that we asked for that the judge didn't really analyze to any great depth is the defendant's position is, there was no reason that we had a trial that lasted four days and that we're here to appeal, because the plaintiff had no case in equity at the time that trial started. There was an affidavit entered by a representative of the plaintiff, Steve Boone, earlier in the case that said, we don't believe that the defendants are selling sound choice materials on their hard drives anymore. The representative that supposedly lost the hard drive said that it doesn't show what we want it to show. Mr. Slepp, during his testimony, didn't make any statements that would say this particular defendant is engaged in business activities which are currently infringing our activities. Under eBay versus Merck Exchange, there would essentially be no possibility of this plaintiff getting an injunction issued under those conditions. Why couldn't there be an injunction prohibiting future conduct? If the future conduct was likely to occur, it would be appropriate. But the plaintiff essentially did not argue any facts that would support such a finding. The record is bereft of any argument about irreparable harm which cannot be just simply presumed on the part of the plaintiff. It has to be shown as how they're being harmed. There has to be some analysis of the balancing of the hardships between the plaintiff and the defendant if an injunction were to be issued. And he also had to look into those public policy issues. The plaintiff didn't attempt to make any factual assertions to any extent that can be discerned by the defendants that an injunction could have issued after the trial happened. Our position is that this trial was simply an exercise in figuring out what the status of the defendant was so they could sue him again three months later. That's not a proper purpose of a trial. We think under Rule 11, and we informed Mr. Harrington prior to the commencement of the trial, that we don't believe you have a case to get a permanent injunction. Therefore, you should drop the case. Mr. Harrington argues that doesn't qualify as a Rule 11 warning motion, so we shouldn't have Rule 11 sanctions available. But certainly the court under Rule 11 can, on its own account, without the defendants taking a to-the-letter process of imposing sanctions for the cost of the trial, that was really done just as an exercise to see what the outcome might be. You know, there is certainly a strong public policy interest in property rights holders protecting and avenging violations of their rights. And I would think that practically one has to balance that right against the myriad infringement possibilities with new technologies. And so you say that this was a trial so they could see or gauge a possible violation down the road. What supports that position of yours? And if, in fact, there was likely to be a violation down the road, then doesn't that kind of mitigate against your position? I think there are two questions that you asked there, and I see my time's up. I'll try to answer them very quickly. One is certainly there's a public policy interest in people being able to protect trademarks. The defendants don't have any qualms or quarrel with Sleptone trying to legitimately protect a lawful trademark. But for there to be a permanent injunction issued, the plaintiff has to make those factual underpinnings of that injunction on the record. They can't just say, we think we need an injunction. eBay specifically goes to that fact that injunctions aren't a matter of course. And I think maybe I've lost the second part of your question in my mind. Oh, what's the basis for saying they were trying to do a preview trial? I almost maybe misspoke when I said that. There is e-mails in the record now at the district court level. We have now pending a motion for summary judgment to dismiss the new case as a matter of race judicata. But we have e-mails from the plaintiff that essentially say, we'll do another trial that will really get Chuck this time. And those are available. Certainly there might be issues about authentication and that kind of thing, but they came from the plaintiff. Thank you. I was struck by what I did not hear in Mr. Oakley's argument and what I did not read in his brief, his two briefs on this issue, and that has not been adequately addressed in the district court, which is the fact that his motion for attorney fees was not timely as a matter of law. He filed a motion for an extension of time after the time for filing a motion for attorney fees had expired. That motion did not identify any cause, much less good cause, and certainly not excusable neglect, as would be required under Rule 6. Would it be timely if we ruled in the prior case the way you wanted us to rule, which is to say that the district judge failed to rule on your timely motion and therefore there is not a final judgment in the case? I think that there is a final judgment in the case, but there are post-judgment motions that are still pending that told the appeal. I think that's an important distinction. Are the post-judgment motions, though, not told the time for filing this motion of theirs? I don't believe that's what the rule says. I think that motion has to be filed within 14 days of the entry of judgment, and judgment has been entered in this case, and they did not meet that standard. It was not timely, and they have yet to offer an excuse as to why it was timely, so there's no extension there. But I think, even more importantly, leaving aside for the moment that even this issue, based on the first case, is not ripe for this court's review. I think the court still does not have jurisdiction over this appeal yet. I think it will have jurisdiction once the district court issues findings of fact and conclusions of law. But aside from that, even under the standard articulated by the Supreme Court in Octane Fitness, which is essentially a totality of the circumstances standard, and I realize that phrase covers all manner of sins, but the reality is this motion has no merit. We produced, regardless of the issues with the evidence that we were not able to come up with, we produced very substantial and, to my mind, conclusive evidence that this defendant had done precisely what we were saying he had done. We produced a drive and the purchaser of that drive, and we showed that drive during the trial. The tracks from that drive showed the sound choice trademarks on them. That evidence, and I think if you look back at this court's ruling in the original appeal in this case, reversing the summary judgment, I think that that very clearly meets the standard of what constitutes trademark infringement. The fact that the judgment went for the defendant does not mean that they are automatically entitled to fees. We produced a substantial case with real evidence and witnesses that was largely uncontroverted, and I've never, I've never, I'm sorry. Did you produce evidence of actual confusion? Yes, I believe so, because... And just briefly, in one or two sentences, what was the evidence of actual confusion? When Mr. Martell testified that when he received the product and saw that it had sound choice, he was pleasantly surprised. He believed what he was getting was legitimate sound choice material, and he also testified that Mr. Polidori told him that he had a digital license to provide that material. That was an outright lie. He does not have such a license, because SLEPTON does not issue those kinds of licenses. So yes, that is evidence of actual confusion. However, evidence of actual confusion is not required for a finding of trademark infringement. There are eight factors under Frisch that are possible, and while evidence of actual confusion is strong evidence of the likelihood of confusion, it's simply not required. And some of the more, some of the other factors are indeed much more important in most cases. Now, as to whether we presented enough evidence on the eBay factors, I'll note that generally speaking, at a trial, there are many things that are going on. And in this case, there was a lot of evidence being put on regarding the actual factors. Now, I don't think that it is inappropriate to say that we simply didn't get to injunctive relief because the judge entered a judgment for the defendant, and that means that cuts off the inquiry. There's no issue on injunctive relief. That's not an issue that has to be presented at trial. It can be presented after the trial, after the judge has indicated a ruling, because that's in the nature of what is the remedy, not which party is entitled to relief, which is the main function of the trial. So I think that's not an important issue as to whether a ruling on attorney fees is appropriate or not in this case. And I think the judge very adequately dealt with these issues on the merits, even though he didn't have to. I think he very easily could have denied this motion as untimely, and that would not have been an abuse of his discretion because he would be following the letter of the law on that point. Thank you very much. Thank you. Mr. Oakley, I trust you're going to address the timeliness of your attorney fee motion. That was exactly the first thing I was going to say is that I should bring up that issue. It is a fact that it was filed more than 14 days after that August 23 judgment was filed. We requested relief from the court. We filed a motion separately from the motion for an extension of time. The court considered that motion. The court exercised its discretion in considering that motion and didn't deny the motion on that basis. So I don't think Mr. Harrington is arguing that the court couldn't consider that motion on that basis. In addition to that, I think more importantly for us, we thought it was unlikely that we were going to get attorney's fees for the entire case, but certainly because there was a trial that was basically held on shaky ground, shaky basis to have the trial at all, that we thought it was appropriate that the court issue Rule 11 sanctions against the plaintiff for taking care of those activities. I thought in looking at the district court's order that the district court said defendants offered no reason or excuse for the delay in the motion seeking an extension of time. Defendants effectively conceded that their motion was untimely and should be procedurally barred. And then the district court said even if it were timely filed, it doesn't meet the criteria. So why isn't that a finding that it was untimely, the end? But even if it were timely, I'm going to reject it. Well, if he was rejecting it for being untimely, I would think that he would say that he's rejecting it for being untimely. But he said that we didn't offer an excuse. He said defendants effectively conceded that their motion was untimely and should be procedurally barred. I don't think we conceded that it should be procedurally barred. We asked for the court's discretion in giving us an extension of time, which under Rule 54, they certainly are allowed to do that. We looked at the advisory committee notes under Rule 54, and one of the reasons why there's a 14-day limit on that is to give the plaintiff the ability to know whether they want to appeal the case if there's going to be an attorney's fees claim. They don't want attorney's fees claims months after the trial. The plaintiff hasn't demonstrated any prejudice, and the judge didn't indicate there was any prejudice to the plaintiff by this being a few days after 14 days. I'll come back again to the point, which I think you're accurately reading what the ruling says. We didn't offer an excuse because we filed a motion for an extension of time. The plaintiff, in essence, didn't directly respond to the motion for attorney's fees under Rule 54, 11, or 37. They just simply said it's out of time. We didn't further respond to that motion because we expected to respond in reply to the motion in chief. So the briefing on that particular motion was a little bit unwieldy, if you want. I do want to make a point with regards to a couple of things that Mr. Harrington said. I think he has simply misinterpreted, it might be the kindest way to say it, the testimony of Mr. Martel. Mr. Martel didn't ever indicate any confusion on his part. If you read the record, I think that's a stretch of an inference. More importantly, though, is that Mr. Martel was at the trial at all. The plaintiff didn't disclose him as a witness until June 17, 2011. Discovery closed on July 1. Therefore, we were barred from having the opportunity to depose Mr. Martel or any of the other witnesses, including Mr. Shoemaker and Mr. DeLiva, who were identified on that same pleading. Then, when we contacted them based on the contact information they gave us, the telephone number was incorrect. So we never were able to contact Mr. Martel until the day he appeared at the last day of the trial. If you read the record, the judge gave the plaintiff the opportunity to fly Mr. Martel in from New Hampshire, delayed the end of the trial by a day so he could arrive to be a witness. We had less than an hour to interview the witness. That was the only opportunity we ever had to speak with that witness. We had no opportunity whatsoever to look at the evidence they offered at the trial. For him to say they offered hard drives at the trial, we believe it would have been a reversible error if the jury would have found on behalf of the plaintiffs, just on that fact alone, that that evidence shouldn't have come in. Thank you. Your red light's on. Thank you. Thank you both for your argument. This case will be submitted.